IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**ELIZABETH ALEXANDER,**
*individually and on behalf of all others*
*similarly situated*; et al.                                              **PLAINTIFFS**

v.                                                         CAUSE NO. 3:17cv560-LG-RHW

**GLOBAL TEL LINK CORPORATION;**
et al.                                                                    **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER GRANTING MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

BEFORE THE COURT is the [33] Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) filed by Defendant Global Tel Link Corporation ("GTL"). The Motion argues that Plaintiffs' Second Amended Complaint fails to state a claim for relief and should be dismissed. The Motion is fully briefed. Having considered the submissions of the parties, the record, and relevant law, the Court concludes that Defendant's [33] Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) should be granted. However, Plaintiffs will be granted leave to amend their Complaint. Also pending is GTL's [34] Motion to Take Judicial Notice, which the Court finds moot.

## I. BACKGROUND

This litigation involves an alleged conspiracy on the part of all named Defendants to charge exorbitant, unfair, and unapproved prices for inmate calling services at prisons operated by the Mississippi Department of Corrections ("MDOC") and at Mississippi county jails. (*See* 2d Am. Compl., ECF No. 11.) Plaintiffs, who are Mississippi inmates and family members of inmates, allege a

"concerted campaign of bribery, kickbacks, and public corruption" through which "Defendants gained a long-term monopoly over telecommunications between family members and friends and their loved ones incarcerated in various facilities in the State of Mississippi." (*Id.* at 2-4.) Though not presently at issue, Plaintiffs seek class certification. Named defendants include GTL, a provider of inmate calling services; GTEL Holdings, Inc., the parent company of GTL; GTEL Acquisition Corp., the parent company of GTEL Holdings, Inc.; GTEL Holding LLC, the parent company of GTEL Acquisition Corp.; Sam Waggoner, a former consultant for and agent of GTL; and Christopher Epps, the former Commissioner of MDOC. (*See id.* at 5-6.) By prior [50] Order, the Court dismissed GTEL Holdings, Inc. and GTEL Acquisition Corp. for lack of personal jurisdiction. Both Waggoner and Epps are currently serving federal prison sentences related to their alleged conduct.

According to Plaintiffs' Second Amended Complaint the State of Mississippi first awarded GTL a contract to provide inmate calling services to MDOC facilities on December 13, 2005. (2d Am. Compl. 8, ECF No. 11.) This contract has been repeatedly renewed without competing bids, and GTL remains the provider of inmate calling services to MDOC facilities despite Epps' and Waggoner's related criminal convictions. (*Id.* at 8, 12, 15.) The contract authorized a fixed rate structure for calls, but Plaintiffs maintain that GTL "grossly" inflated the cost to end users by including various unapproved surcharges, ancillary charges, and additional per-call fees. (*Id.* at 8-9, 12.) Plaintiffs allege that these inflated fees – which ran afoul of the inmate calling services contract and filed rates with the

– 2 –

Mississippi Public Service Commission ("PSC") – were intentionally overlooked by Epps in exchange for Epps' receipt of a share of the increased profits. (*Id.* at 10-11.)

To effect this arrangement, GTL's regional manager, Robert Orso, doubled GTL's monthly payment to Waggoner in 2011, and Waggoner funneled half of that increase to Epps. (*Id.* at 10.) Plaintiffs state that these kickbacks to Epps were intended to "curry favor with Epps for the purpose of influencing Epps' decision regarding GTL and its contract with MDOC and with local jails subject to Epps' influence." (*Id.* at 10-11.) Although Epps was only officially in charge of MDOC, Plaintiffs maintain that his "influence and ability to promote GTL's interests extended far beyond the MDOC facilities under his direct supervision and control;" Epps "strong-armed" local jails into using GTL's inmate calling services by threatening to remove state inmates – and their related per diem payments – from these jails. (*Id.* at 11.)

Plaintiffs assert that this arrangement effectively ceded control of MDOC affairs to GTL, who sought every opportunity to increase the prices paid by Plaintiffs. (*Id.*) Plaintiffs submit that Waggoner found additional ways to increase GTL's revenue besides the inflated calling service fees: "Waggoner lobbied Epps to allow GTL to provide video communication services between inmates and their visitors," which would be offered at "significantly higher cost than traditional phone service." (*Id.* at 12.) Epps approved this additional service, which increased both GTL's revenue and the kickbacks he received. (*Id.* at 13.)

Plaintiffs allege that Waggoner paid Epps over $300,000 in kickbacks and bribes from 2011 through 2014 with money from GTL. (*Id.*) They maintain that "GTL knew, or had every reason to know and should have known, that the money it was paying Waggoner was being used to pay bribes and kickbacks to Epps for the purpose of obtaining and retaining the aforementioned contract." (*Id.* at 14.) Plaintiffs claim that they have suffered monetary damages as a result of this alleged scheme to impose exorbitant fees for inmate telephone calls. (*Id.* at 15.) Plaintiffs characterize these actions in furtherance of acquiring and maintaining control of MDOC as a pattern of racketeering activity conducted by a criminal enterprise consisting of Epps, Waggoner, and GTL. (*Id.* at 14.) Accordingly, Plaintiffs assert claims pursuant to the Racketeer Influenced and Corruption Organizations Act ("RICO"), 18 U.S.C. §§ 1961(a)-(d), and various state law causes of action. (*Id.* at 19-25.)

On September 22, 2017, Defendant GTL filed the instant Motion to Dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). The parties finished briefing the Motion on February 2, 2018.

## II. DISCUSSION

a. <u>Motion to Dismiss Standard</u>

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In deciding a Rule 12(b)(6) motion to dismiss, the Court accepts all well pleaded facts as true and views them in the light most favorable to Plaintiff. *New Orleans City v. Ambac Assur. Corp.*, 815 F.3d 196, 199 (5th Cir. 2016). But "the complaint must allege more than labels and conclusions, a formulaic recitation of the elements of a cause of action will not do, and factual allegations must be enough to raise a right to relief above the speculative level." *Jabaco, Inc. v. Harrah's Operating Co., Inc.*, 587 F.3d 314, 318 (5th Cir. 2009). "While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 664. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

Generally, if a court considers materials outside of the pleadings, the motion to dismiss must be treated as a motion for summary judgment. *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). However, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Id.* GTL has attached numerous exhibits to its Motion, of which GTL separately asks the Court to take judicial notice. (*See* Mot. Take Judicial Notice, ECF No. 34.) These exhibits include GTL's 2005 contract with MDOC, GTL's initial bid response, GTL's 2016 contract with MDOC, the Mississippi Attorney General's

complaint against GTL in a separate state court action, the Order of Dismissal in that state court action, the settlement agreement that resolved that state court action, GTL's telecommunications tariffs approved by the PSC, and the PSC's Order initiating a generic docket on February 4, 1992 to consider the provision of coinless telephone services to Mississippi inmates.

The Court has reviewed these documents. Although many of them are referenced in Plaintiffs' complaint or are otherwise public documents, GTL ultimately asks the Court to consider these documents in ruling on the 12(b)(6) motion to dismiss. However, the Court may not rely on these documents without converting GTL's Motion to Dismiss to a Motion for Summary Judgment. *But see S. Indus. Contractors, LLC v. Neel-Schaffer, Inc.*, No. 1:17CV255-LG-JCG, 2017 WL 5906041, at *1 (S.D. Miss. Nov. 30, 2017) ("This contract is referred to in Southern industrial's Complaint, and the contract is central to Southern Industrial's claims, because Southern Industrial claims that it is a third-party beneficiary of that contract.").

b. <u>Analysis</u>

Plaintiffs' Complaint asserts the following causes of action: (1) racketeering activity and conspiracy in violation of RICO, (2) negligence per se predicated upon the Mississippi Consumer Protection Act ("MCPA"), (3) civil conspiracy, (4) common law fraud, (5) breach of fiduciary duty and conspiracy to breach a fiduciary duty, (6) breach of duty of good faith and fair dealing, (7) unjust enrichment, and (8) punitive damages. GTL makes numerous arguments in support of its position that each and

every one of Plaintiffs' claims should be dismissed for failure to state a claim. However, because the Court finds that Plaintiffs have failed to adequately allege causation and damages in any of their claims, the Court need not proceed further through GTL's Motion and address the merits of each individual claim.

As GTL notes, "[c]ausation and injury are elements of Plaintiffs' claims." (Def.'s Mem. Supp. 8, ECF No. 37.) But GTL maintains that Plaintiffs' complaint fails to plausibly allege that GTL's conduct caused Plaintiffs' injuries. GTL argues (1) that the complaint does not allege that Epps had any control over the Mississippi Department of Information Technology Services ("ITS"), which administered the bidding process by which GTL was awarded the initial contract in 2005, (2) that Plaintiffs fail to allege facts showing that Waggoner's payments to Epps actually affected the rates Plaintiffs' paid, and (3) that Plaintiffs fail to identify any surcharges or ancillary charges they actually paid, let alone whether and to what extent they were made different by Waggoner's payments.

GTL's first argument challenges the evidentiary basis for Plaintiffs' claims. Plaintiffs' allegations concerning Epps have little to do with the initial contract awarded in 2005 – they assert that the contract was repeatedly renewed without bid and at Epps' behest. Plaintiffs' allege that Robert Orso, GTL's regional manager, increased GTL's payments to Waggoner so that Waggoner could increase his payments to Epps, and that these payments were to ensure that GTL maintained its MDOC contract and could continue to charge excessive and unapproved fees for inmate calling services. Orso is alleged to have acted on behalf

– 7 –

of GTL to funnel money through Waggoner to Epps.  ITS is not alleged to have had a role in this arrangement, and the Court may not here weigh evidence to determine whether ITS – rather than Epps – actually had control over awarding the MDOC inmate calling services contract.  As to GTL's second argument, it is plausible that these alleged bribes caused Epps to allow GTL to charge excessive and unapproved fees.  Plaintiffs need not provide additional evidentiary support at the pleading stage connecting these bribes to the rates charged in order to survive a motion to dismiss.

However, the Court finds that Plaintiffs' failure to properly identify the unapproved surcharges or ancillary fees actually paid is fatal to each of the claims alleged.  Plaintiffs' factual allegations primarily tell a story in which Defendants conspired to charge unreasonably high rates by defrauding the public at large.  But, in their Response in Opposition, Plaintiffs withdraw any claims premised upon having been charged "unreasonable" rates for services, emphasizing that they "are not challenging or seeking to alter or amend the applicable filed rates or services." (Pls.' Resp. Opp. 11, ECF No. 45.)  Thus, what remains are Plaintiffs' causes of action premised upon having been charged surcharges and ancillary fees that were not approved by the PSC.

To plausibly allege that GTL charged fees unapproved by the PSC, Plaintiffs must show how the fees actually charged were inconsistent with the approved fees. *Atlas Trading Conglomerate Inc. v. AT&T Inc.*, 714 F. App'x 318, 322 (5th Cir. 2017).  Plaintiffs' Second Amended Complaint does not identify the unapproved

– 8 –

charges to which they were allegedly subjected.  In their response brief, they mention a "LEC Billing Fee," a "Carrier Access Rec. Fee," an "AdvancePay Transaction Fee," and a "Regulatory and Carrier Cost Recovery Fee."  (Pls.' Resp. Opp. 4-5, ECF No. 45).  However, Plaintiffs may not supplement their allegations through their briefing.  *See Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.").  Even if this passing mention of these various allegedly unapproved fees were present in the Second Amended Complaint, Plaintiffs would still fail to state a plausible claim for relief.  *See Atlas*, 714 F. App'x at 321-22 ("Atlas points out that it pled four types of charges assessed by the ILECs but allegedly 'not found in any applicable switched-access tariff'. . . . Atlas has neither pled nor shown, though, how these charges are inconsistent with the tariffed rates.  That the terms are not found in the tariffs is insufficient.")

Plaintiffs' allegations concerning causation and damages do not meet the standard of plausibility set forth by *Twombly* and *Iqbal*.  They must, therefore, be dismissed pursuant to Rule 12(b)(6).  Plaintiffs will be given an additional opportunity to amend their pleadings in order to state a plausible claim for relief premised upon having been charged specific surcharges and ancillary fees not approved by the PSC.

Finally, the Court notes that Plaintiffs' twenty-seven page Second Amended Complaint has been characterized by the Movants as a "shotgun pleading."

> Though the groupings cannot be too finely drawn, we have identified four rough types or categories of shotgun

> pleadings. The most common type—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. The next most common type, at least as far as our published opinions on the subject reflect, is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief. Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against. The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests.

*Weiland v. Palm Beach Cty. Sheriff's Office,* 792 F.3d 1313, 1321-23 (11th Cir. 2015).

In as much as the Second Amended Complaint is dismissed, the shotgun pleading claim is now largely moot. However, it is also worth noting that one inevitable consequence of shotgun pleadings is to "delay cases by wasting scarce judicial and parajudicial resources." *See Starship Enters. of Atlanta, Inc. v. Coweta Cty. Ga.*, 708 F.3d 1243, 1251 (11th Cir. 2013). Plaintiffs are encouraged to carefully review future filings to ensure that they have "give[n] the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland*, 792 F.3d at 1323.

III. CONCLUSION

Plaintiffs have failed to state a claim for which relief may be granted. GTL's Motion to Dismiss must, therefore, be granted. Plaintiffs will be granted an pportunity to amend their pleadings, consistent with the Court's conclusions herein. Any amended complaint must be filed within fourteen days of the entry of this Order.

**IT IS THEREFORE ORDERED AND ADJUDGED** that [33] Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) filed by Defendant Global Tel Link Corporation is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs are granted leave to file a third amended complaint, consistent with the Court's conclusions in this Order, to be filed within fourteen (14) days of the entry of this Order. If Plaintiffs do not timely file a third amended complaint stating claims against Global Tel Link Corporation, Global Tel Link Corporation will be dismissed from this lawsuit.

**IT IS FURTHER ORDERED** that the [34] Motion to Take Judicial Notice is **MOOT**.

**SO ORDERED AND ADJUDGED** this the 18th day of July, 2018.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE